**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | |
|---|---|
| **RICARDO J. FIGUEROA,**<br>Plaintiff,<br><br>v.<br><br>**AMERICAN EXPRESS NATIONAL BANK,**<br>Defendant. | C/A No. 3:26-cv-04346-SAL-TER<br><br>**COMPLAINT FOR NEGLIGENT AND WILLFUL NONCOMPLIANCE WITH THE FAIR CREDIT REPORTING ACT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Ricardo J. Figueroa, proceeding without counsel, brings this action against Defendant American Express National Bank and alleges as follows:

## I. NATURE OF THE ACTION

1. This is an action under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., based on Defendant's duties as a furnisher after Experian notified it of Plaintiff's dispute concerning six American Express tradelines.

2. The dispute did not merely deny responsibility for the accounts. It identified account-specific omissions and internal inconsistencies that Defendant could test against its own account-level records, including missing account status, missing payment history, ambiguous closure reporting, unexplained amount fields, incomplete limit information, stale update fields, and missing chronology surrounding two charge-offs.

3. Experian received and processed Plaintiff's dispute. On September 18, 2026, Experian first notified Plaintiff that AMEX account groups beginning 349991 and 349992 had not been changed and would remain on his credit report.

4. Experian thereafter completed the reinvestigation and issued results stating that all six disputed American Express tradelines were verified. Every disputed tradeline remained on Plaintiff's Experian report without correction.

5. The completed results encompassed the three disputed accounts beginning 349991, the two disputed accounts beginning 349992, and the disputed account beginning 349993. The same omissions, inconsistencies, and ambiguous fields identified in Plaintiff's detailed dispute remained.

6. Plaintiff alleges that Defendant responded to the Experian notices without conducting a reasonable investigation directed to the specific inaccuracies and omissions identified in the dispute and without making the corrections required by 15 U.S.C. § 1681s-2(b)(1).

## II. PARTIES

7. Plaintiff Ricardo J. Figueroa is a natural person and a consumer within the meaning of 15 U.S.C. § 1681a(c). He resides at 200 Baysdale Drive, Columbia, South Carolina 29229-7449.

8. Defendant American Express National Bank is a federally chartered national bank with its headquarters at 4315 South 2700 West, Salt Lake City, Utah 84184.

9. Defendant furnished the six American Express tradelines described below to Experian and therefore acted as a furnisher of information for purposes of 15 U.S.C. § 1681s-2.

10. Experian Information Solutions, Inc. is a consumer reporting agency. Experian is not named as a defendant in this action.

## III. JURISDICTION, PERSONAL JURISDICTION, AND VENUE

11. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claims arise under 15 U.S.C. § 1681s-2(b).

12. This Court also has jurisdiction under 15 U.S.C. § 1681p, which permits an action to enforce FCRA liability in an appropriate United States district court without regard to the amount in controversy.

13. The Court has personal jurisdiction over Defendant because Defendant conducts consumer-credit business in South Carolina, furnished information concerning a South Carolina resident for use in his consumer file, and purposefully directed the challenged post-dispute reporting into South Carolina.

14. Venue is proper in the District of South Carolina under 28 U.S.C. § 1391(b)(2) because Plaintiff reviewed the challenged report, prepared and sent the dispute, received the completed results, and received two credit denials based on Experian reports in this district.

15. Assignment to the Columbia Division is proper under Local Civil Rule 3.01 because Plaintiff resides in Columbia and a substantial part of the events and effects alleged occurred there.

## IV. THE FCRA DUTIES AT ISSUE

16. When a consumer disputes the completeness or accuracy of furnished information through a consumer reporting agency and the agency notifies the furnisher under 15 U.S.C. § 1681i(a)(2), the furnisher must conduct an investigation concerning the disputed information. 15 U.S.C. § 1681s-2(b)(1)(A).

17. The furnisher must review all relevant information provided by the consumer reporting agency and report the results of its investigation to that agency. 15 U.S.C. § 1681s-2(b)(1)(B)-(C).

18. If the investigation finds information incomplete or inaccurate, the furnisher must report that finding to every nationwide consumer reporting agency to which it furnished the information. 15 U.S.C. § 1681s-2(b)(1)(D).

19. If disputed information is inaccurate, incomplete, or cannot be verified after reinvestigation, the furnisher must modify, delete, or permanently block the information as appropriate. 15 U.S.C. § 1681s-2(b)(1)(E).

20. A reasonable investigation requires a careful inquiry into the furnisher's records sufficient to determine whether the disputed information can be verified. Johnson v. MBNA America Bank, N.A., 357 F.3d 426, 430-31 (4th Cir. 2004).

21. A report can be actionable when it is incomplete or materially misleading even if isolated fields are technically accurate. Saunders v. Branch Banking & Trust Co. of Virginia, 526 F.3d 142, 148, 150 (4th Cir. 2008).

22. Under controlling Fourth Circuit law, a plaintiff states a furnisher claim by alleging facts showing inaccurate or incomplete information that is objectively and readily verifiable by the furnisher. Roberts v. Carter-Young, Inc., 131 F.4th 241 (4th Cir. 2025).

23. The disputes alleged here concern fields in Defendant's own account records, including actual account status, actual closure date, payment history, charge-off chronology, amount calculations, credit-limit history, and update dates. Those matters are objectively and readily verifiable from Defendant's records and do not require Defendant to resolve a credibility contest or act as a court.

## V. FACTUAL ALLEGATIONS

### A. The September 9, 2026 Experian Disclosure

24. On September 9, 2026, Experian generated Plaintiff's personal credit disclosure, Report Number 4046-5226-66.

25. The disclosure contained six separate tradelines identified as AMERICAN EXPRESS. Three account numbers begin 349991, two begin 349992, and one begins 349993.

26. Experian classified four of the six American Express tradelines as potentially negative: the two tradelines with no status and the two charge-off tradelines.

27. Each tradeline listed the same American Express contact address, P.O. Box 981537, El Paso, Texas 79998, and the same telephone number, (800) 874-2717.

**B. Account 3499919719230243**

28. Experian reported account 3499919719230243 as an individual credit-card account opened September 20, 2000, with a status of Paid, Closed/Never late and a status update in October 2024.

29. The tradeline reported no balance, no balance-update date, no recent payment, no monthly payment, a $1,000 credit limit, a $0 highest balance, and retention until October 2034.

30. The displayed payment grid began in November 2017, showed current markers through September 2024, and showed a closed marker in October 2024. No account history from September 2000 through October 2017 appeared in the disclosure.

31. The current comment stated that Plaintiff disputed the account information and that the account was closed at the credit grantor's request.

32. Plaintiff's dispute asked Experian and Defendant to verify the actual closing date and the basis for the reported retention date and to supply complete information rather than a partial grid that begins more than seventeen years after opening.

**C. Account 3499926491566523**

33. Experian reported account 3499926491566523 as an individual credit-card account opened December 20, 2018, with a status of Paid, Closed/Never late and a status update in March 2024.

34. The tradeline reported no balance, no balance-update date, no recent payment, no monthly payment, a $1,000 credit limit, a $95 highest balance, and retention until March 2034.

35. The payment grid showed a closed marker in May 2020, no-data markers from June 2020 through February 2022, current markers from March 2022 through February 2024, and a second closed marker in March 2024.

36. The two closure markers, separated by twenty-one months of no data and then twenty-four months of current reporting, do not disclose whether the account closed once, reopened, or was reported with an erroneous closure date.

37. The current comment stated that the account was closed due to inactivity and that Plaintiff disputed the account information, but it did not identify the actual closure date or explain the two separate closure markers.

38. The actual closure and any reopening are objectively verifiable from Defendant's account records. Plaintiff specifically requested that those fields be reconciled.

**D. Accounts 3499917511313843 and 3499918766224573**

39. Experian separately classified accounts 3499917511313843 and 3499918766224573 as potentially negative.

40. The first was reported as opened May 15, 2000. The second was reported as opened September 15, 2000.

41. For each account, Experian reported the account type as NA, the status as NO STATUS, and the status-update field as NA.

42. For each account, the disclosure omitted a balance, balance-update date, recent payment, monthly payment, original balance, highest balance, payment history, and scheduled retention or removal date.

43. The first account listed only a one-month term. The second listed no terms. Neither tradeline contained information showing why Experian classified it as potentially negative.

44. Each tradeline contained only two substantive comments: Account in dispute under Fair Credit Billing Act and Account closed at credit grantor's request.

45. The combined presentation is incomplete and materially misleading because the accounts are displayed as adverse while omitting the basic status and account data necessary to understand the nature, amount, date, or basis of any adverse information.

46. Defendant's records can objectively establish the account type, final status, closure date, balance at closure, payment history, and whether any adverse information remains reportable.

47. Plaintiff's written dispute specifically identified every omitted field, the stale Fair Credit Billing Act dispute notation, and the potentially negative classification, and requested completion or deletion of the tradelines.

**E. Account 3499925656261283**

48. Experian reported account 3499925656261283 as an individual credit-card account opened April 13, 2018.

49. The status stated: Account charged off. $23,481 written off. $5,677 past due as of Sep 2025. The tradeline separately reported a $23,481 balance, a September 11, 2025 balance-update date, no credit limit, a $23,481 highest balance, and retention until October 2031.

50. The payment grid displayed collections for May through July 2025 and charge-offs for August and September 2025. It displayed no earlier monthly payment history and no 30-, 60-, 90-, 120-, 150-, or 180-day delinquency entry.

51. The report therefore presented a substantial charge-off without displaying the delinquency chronology preceding collection and charge-off. Defendant's records can objectively show whether that omitted chronology exists and whether the reported charge-off status is supported.

52. The tradeline simultaneously displayed a $23,481 balance and write-off but a $5,677 past-due amount. Those figures may represent different accounting concepts, but the report did not disclose their relationship or provide the underlying components necessary to determine whether both fields were complete and accurate.

53. The balance history reported $22,275 in May 2025, $22,842 in June 2025, $23,442 in July 2025, and $23,481 in August 2025. The additional-information field repeated each same monthly amount under the combined label credit limit/high balance, while the principal credit-limit field remained blank.

54. That presentation does not disclose whether the monthly values were balances, high balances, credit limits, or some combination of those fields. Defendant's records can objectively identify the actual credit limit and the proper value for each reported field.

55. The status-update field remained August 2025 and the balance-update field remained September 11, 2025 on a report generated September 9, 2026. The disclosure did not state whether Defendant had verified that the balance and past-due figures remained current one year later.

56. The account was scheduled to remain until October 2031, but the displayed tradeline omitted the date of first delinquency from which that retention period could be evaluated.

57. Experian's report stated that this item had already been updated from processing of a dispute in July 2026. The same omissions and ambiguities nevertheless remained in the September 9 report.

58. Plaintiff's September 9 dispute identified each of these fields and requested that Experian and Defendant verify the charge-off chronology, amount fields, credit-limit history, date of first delinquency, update dates, and scheduled removal date from account-level records.

**F. Account 3499930193574313**

59. Experian reported account 3499930193574313 as an individual credit-card account opened August 10, 2022.

60. The status stated: Account charged off. $1,035 written off. $453 past due as of Oct 2025. The tradeline separately reported a $1,035 balance, an October 27, 2025 balance-update date, no credit limit, a $1,035 highest balance, and retention until August 2031.

61. The payment grid reported the account current through November 2024, then 30 days past due in December 2024, 60 in January 2025, 90 in February, 120 in March, 150 in April, and charged off beginning in May 2025.

62. The report did not display a 180-day delinquency entry before the charge-off. Whether the May 2025 charge-off date and the reported delinquency chronology accurately reflect Defendant's account records is objectively verifiable.

63. The tradeline simultaneously displayed a $1,035 balance and write-off but a $453 past-due amount. The report did not disclose the relationship between those amounts or the components necessary to determine whether both fields were complete and accurate.

64. The main credit-limit field was blank, while the additional-information field stated that the credit limit/high balance was $1,000 from September 2024 through August 2025. The same report listed a $1,035 balance and highest balance.

65. A balance can exceed a credit limit because of interest or fees, but the report did not disclose the actual credit limit as a discrete field or identify what caused the reported excess. Defendant's records can objectively resolve both issues.

66. The status-update field remained May 2025 and the balance-update field remained October 27, 2025 on a report generated September 9, 2026. The disclosure did not state whether Defendant had verified that the balance and past-due figures remained current.

67. The comments reflected prior disputes, and Experian stated that this item had been updated from processing of a dispute in November 2025. The disputed fields remained in the September 2026 disclosure.

68. Plaintiff's September 9 dispute specifically requested verification of the amount fields, credit limit, charge-off chronology, date of first delinquency, update dates, and retention date from Defendant's records.

**G. Plaintiff's Detailed Dispute Through Experian**

69. On September 9, 2026, Plaintiff mailed a detailed written dispute to Experian Information Solutions, Inc., National Consumer Assistance Center, P.O. Box 4500, Allen, Texas 75013.

70. Plaintiff used USPS Certified Mail number 9214 8901 4298 0497 0777 46.

71. The dispute identified Plaintiff by full name, current address, date of birth, the last four digits of his Social Security number, Experian Report Number 4046-5226-66, and the full or masked account numbers at issue.

72. The dispute devoted separate sections to the American Express accounts and stated the specific field, chronology, or omission being challenged for each account.

73. The submission asked Experian to forward the full text of each account-specific dispute to the furnisher and to delete or modify information that could not be verified as accurate and complete.

74. Experian processed the submission. By September 18, 2026, Experian's mobile application displayed separate initial notices for AMEX account groups beginning 349991 and 349992, stating that the accounts had not been changed and would remain on Plaintiff's credit report.

75. Experian thereafter completed its reinvestigation and issued final results stating that each of the six disputed American Express tradelines had been verified.

76. The final results left all six tradelines unchanged, including the three accounts beginning 349991, the two accounts beginning 349992, and account 3499930193574313. None of the specifically disputed fields was corrected or completed.

77. On information and belief, Experian notified Defendant of each of the six American Express disputes under 15 U.S.C. § 1681i(a)(2). Experian's completed results verifying every disputed American Express tradeline support the reasonable inference that Defendant received the account-specific disputes and returned verification responses for all six accounts.

78. The date, content, and routing of Experian's electronic notices to Defendant, together with Defendant's responses and investigation records, are maintained by Experian and Defendant and are not available to Plaintiff before discovery.

**H. Defendant's Unreasonable Investigation and Continued Furnishing**

79. Defendant maintained the underlying account applications, statements, payment histories, closure records, charge-off records, limit histories, balance calculations, dispute notes, and furnishing history needed to evaluate the disputes.

80. The disputed fields were not subjective opinions. Defendant could determine from its records whether an account had a status, when it closed, whether it reopened, what payment history existed, what amount was charged off, what amount remained due, what the actual credit limit was, when the first delinquency occurred, and when the data was last verified.

81. The detailed nature of Plaintiff's submission required an investigation directed to those identified fields, not a comparison limited to Plaintiff's name, address, and the same summary data Defendant had already furnished.

82. The completed results for all six accounts support the reasonable inference that Defendant verified the same data without correcting the facially incomplete NO STATUS tradelines, resolving the double-closure chronology, supplying the missing charge-off chronology, or reconciling the ambiguous amount and credit-limit fields.

83. The blanket verification of all six tradelines, the absence of any correction to the specifically disputed fields, and the persistence of defects identified in prior disputes support the inference that Defendant did not conduct the careful account-level inquiry required by § 1681s-2(b).

84. If Defendant's records did not permit verification of a disputed field, Defendant was required to modify, delete, or permanently block the unverifiable information as appropriate. Defendant instead allowed the challenged information to remain.

85. Plaintiff does not allege that every blank field or every difference between two accounting fields is automatically false. He alleges that the combined reporting was incomplete or materially misleading, that he identified the exact disputed fields, and that Defendant failed to use readily available records to report a complete and coherent result.

86. Defendant's post-notice verification and continued furnishing were communicated to Experian, an entity distinct from Plaintiff and Defendant, and caused Experian to retain adverse and incomplete American Express information in Plaintiff's consumer file.

87. On September 24, 2026, after Experian completed the reinvestigation and left all six American Express tradelines verified and unchanged, Plaintiff applied for a Chase credit card and a Citi credit card. Chase and Citi each obtained Plaintiff's consumer report from Experian.

88. Chase and Citi each denied Plaintiff's application as a result of the adverse American Express information appearing in the Experian report. The dissemination of the disputed information to two prospective creditors and the resulting denials caused concrete harm, including lost credit opportunities and reputational injury.

89. Plaintiff also expended time and effort identifying the account-level defects, preparing and mailing the detailed dispute, reviewing the results, and attempting to obtain an accurate and complete credit file. Plaintiff seeks only damages and other relief established by admissible evidence and proven to have resulted from Defendant's noncompliance.

## VI. COUNT I

## NEGLIGENT NONCOMPLIANCE WITH 15 U.S.C. § 1681s-2(b)

90. Plaintiff incorporates paragraphs 1 through 89 as if fully stated here.

91. Plaintiff submitted a detailed dispute concerning the completeness and accuracy of six American Express tradelines to Experian, a consumer reporting agency.

92. Experian processed and completed the dispute and, on information and belief, notified Defendant of the six account-specific disputes under 15 U.S.C. § 1681i(a)(2). Experian's final results stated that all six American Express tradelines were verified and left them unchanged.

93. The disputed matters were objectively and readily verifiable from Defendant's own records.

94. Defendant negligently failed to conduct a reasonable investigation of the disputed information, failed to review all relevant information supplied through Experian, failed to accurately report its investigation results, and failed to make the corrections required by 15 U.S.C. § 1681s-2(b)(1)(A)-(E).

95. Defendant's failures caused the incomplete and materially misleading information to remain in Plaintiff's Experian file, to be disclosed to Chase and Citi, and to cause the credit denials and other harm alleged above.

96. Under 15 U.S.C. § 1681o, Defendant is liable for actual damages caused by its negligent noncompliance, together with recoverable costs and attorney's fees.

## VII. COUNT II

## WILLFUL NONCOMPLIANCE WITH 15 U.S.C. § 1681s-2(b)

97. Plaintiff incorporates paragraphs 1 through 96 as if fully stated here.

98. The September 9 dispute identified concrete omissions and inconsistencies by account number and field. It also notified Experian that some American Express tradelines had survived earlier dispute processing with the same defects.

99. Defendant had access to the account-level records necessary to resolve the disputes and knew that its post-notice response would determine whether Experian continued to display the challenged information.

100. Despite that notice and access, Defendant verified all six tradelines without correcting the plainly incomplete NO STATUS tradelines or resolving the other specifically identified fields.

101. To the extent discovery shows that Defendant used a procedure that merely compared the dispute against the same summary data previously furnished, ignored the account-specific materials, or verified information it could not substantiate from its records, Defendant acted knowingly or in reckless disregard of the duties imposed by 15 U.S.C. § 1681s-2(b).

102. Under 15 U.S.C. § 1681n, Defendant is liable for actual or statutory damages, punitive damages as the Court may allow, and recoverable costs and attorney's fees for willful noncompliance.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Ricardo J. Figueroa respectfully requests that the Court enter judgment in his favor and against Defendant and award:

A. Actual damages proven to have resulted from Defendant's negligent or willful noncompliance with the FCRA;

B. Statutory damages authorized by 15 U.S.C. § 1681n if Defendant's noncompliance is found willful;

C. Punitive damages in an amount the Court permits if Defendant's noncompliance is found willful;

D. The costs of this action and reasonable attorney's fees to the extent recoverable under 15 U.S.C. §§ 1681n and 1681o;

E. Prejudgment and post-judgment interest as allowed by law; and

F. Any other relief the Court determines to be just and authorized by law.

## IX. JURY DEMAND

103. Plaintiff demands a trial by jury on every issue so triable.

Respectfully submitted,

**/s/ Ricardo J. Figueroa**
Ricardo J. Figueroa
200 Baysdale Drive
Columbia, South Carolina 29229-7449
Email: r.figueroacintron@yahoo.com
Plaintiff, pro se